RODNEY, District Judge.
This is an application for a preliminary injunction restraining the holding of a special meeting of stockholders of Thermoid Company, a Corporation of the State of Delaware, on September 20, 1956, called by a percentage of the stockholders and allegedly so called pursuant to the by-laws.
A minority of the stockholders of the Company, deeming themselves entitled to representation on the Board of Directors, sought such remedy by the Board of Directors through a change in that membership by resignations or removals of existing members and election of others. This not being effected, remedy was sought through a special meeting of the stockholders to be called according to the by-laws.
Art. 1, Sec. 2 of the by-laws governing the question of special meetings of stockholders and after provision for calling such meetings by regular officers of the company provides, insofar as here material :
“A special meeting of the stockholders shall be called by the Secretary upon request in writing * * * of record holders of at least 25% of the outstanding stock according to the number of shares that would be entitled to vote at such meeting; in the event of the Secretary failing for three days to comply with such a request * * * the record holders of 10% of the number of shares outstanding may call such meeting # * * »
The special meeting of stockholders, now objected to, was called by Graham-Paige Corporation, the owner of stock of *401 Thermoid Company in excess of' 10% of the outstanding stock thereof and pursuant to said by-law and under the following conditions:
On Thursday, September 6, 1956, at 5 P. M., the Secretary of Thermoid Company received from Graham-Paige Corporation a letter demanding that the Secretary call a special meeting of the stockholders of Thermoid Company on September 20 for the purpose of adopting amendments to the by-laws of the Company and taking other specified action as set out in the letter. These were:
1. To consider and vote upon a proposal to amend the by-laws in the following respects:
(a) To amend Sec. 4 of Article I of the by-laws [in some respect not here material].
(b) To amend See. 1 of Art. II of the by-laws so as to increase the number of directors from nine to seventeen.
(e) To amend Sec. 3 of Art. II of the by-laws by providing that vacancies on the Board of Directors caused by increasing the number of directors shall be filled by the stockholders.
(d) To amend Sec. 8 of Art. II so as to increase from 5 to 7 the number of directors necessary to constitute a quorum at meetings of the Board of Directors.
2. To elect eight directors to fill the vacancies created by the amendment of the by-laws, and to hold office until the next annual meeting.
The letter from Graham-Paige Corporation to the Secretary of Thermoid Company stated that the Graham-Paige Corporation had no present intention of making any general solicitation for proxies and warned the Company that the directors of Thermoid would be held personally responsible for expenditure of Company funds for any solicitation of proxies and copies of the letter were sent to all nine directors of Thermoid.
Graham-Paige Corporation made press releases of the proposed special meeting of the stockholders to be held on September 20 and the general purposes of such meeting and copies of these releases appear in the case.
The complaint in the present case set out and it is contended by the plaintiff that it is and was the duty of Thermoid' Company, both in relation to the Securities and Exchange Commission and of the policy of the New York Stock Exchange (with which Thermoid was registered), to solicit proxies with relation to this special meeting of the stockholders and to give them information of matters to come before the meeting. The complaint alleges that the shortness of time and the actions of Graham-Paige prevented the carrying out of these duties. The complaint alleges that the actions of Graham-Paige, and in connection with the press releases issued by Graham-Paige, constituted a solicitation of proxies in violation of the provisions of the Securities Exchange Act of 1934 and of the Rules issued by the Securities and Exchange Commission.
These questions are interesting in themselves but the consideration of them must be delayed until the determination of the legality of the call of the meeting itself.
As heretofore indicated the call of the meeting for September 20 was by Graham-Paige as the holder of more than 10% of the outstanding stock of Thermoid. That it was the owner of such percentage of stock is not disputed.
It is obvious, however, from the inspection of the by-laws (Art. 1, Sec. 2, as hereinbefore set out) that the owners of 10% of the stock have no right to call such meeting until a neglect or refusal of the Secretary of Thermoid to call such special meeting at the request of the holders of 25% of the registered stock of the Company entitled to vote. That the Secretary of the Thermoid Company did neglect or refuse to call such meeting may be assumed from his letter of September 8 in answer to the letter of Graham-Paige of September 6, in which said answer the Secretary stated “ * * * I am instructed to say that the demands *402 and purposes therein expressed are deemed improper and illegal.”
The question, then, is directly presented as to whether 25% of the holders of stock of Thermoid legally requested the Secretary to call the special meeting of the stockholders.
There is some suggestion that the stockholding of Graham-Paige in the Thermoid Company exceeds, at the present time, 25% of the outstanding stock. The ascertainment of the required percentage of the stock to fulfill the by-law requirement must be had as of the time and in connection with the claims of ownership at the time reliance was had upon the by-law and remedial action sought thereon.
It is conceded that the outstanding stock of Thermoid entitled to vote on September 6, 1956, the time of the demand for a special meeting, was 867,397 shares. The required percentage (25%), thus, was slightly in excess of 216,849.
When Graham-Paige demanded that the Secretary of Thermoid call a special meeting of the stockholders, it filed with him four several letters from four purported owners in almost identical language and each bearing thereon the number of shares claimed. Three of these letters were:
Graham-Paige 123,850
Orvis Bros. 39,079
Bicher & Co. 46,437 209,366
As to these, no adverse contention is made but alone they do not equal 25% of the outstanding stock.
The fourth letter relied upon by Graham-Paige and contested by Thermoid was a letter purporting to be from “George S. Fabel, Thermoid Managers’ Group, Inc. and Russell H. Temple, by William M. Jennings, Attorney in fact” and representing 38,622 shares.
If this letter and demand was valid, the required percentage was accounted for and without it there was no proper demand upon the Secretary. Its validity, therefore, must be critically examined.
• Thermoid contends that since the Secretary was required to pass upon the validity of the demand of 25% of outstanding stock and within 3 days to commit the Company to considerable expense in calling the special meeting of stockholders, so it was necessary that persons demanding such meeting should show a clear right thereto, and no authority appeared for William M. Jennings to so act.
With-the demand of Graham-Paige to the Secretary of Thermoid for the calling of the special stockholders meeting and the request of Fabel, Thermoid Managers’ Group, Inc. and Temple by William M. Jennings, attorney in fact, for such meeting, there were attached three several proxies executed by the parties respectively. These three proxies were dated in May 1956 and similar in form as set out in the footnote.[1]
It will be noted that the proxies were irrevocable from May to November 1956. The proxies respectively ran to “John J. Bergen, Irving Mitchell Felt and William M. Jennings or a majority of such thereof as shall act” and expressly in- *403 eluded the “making of any demand for a special meeting or meetings of stockholders'’.
The proxies being irrevocable until November 15, 1956, it would seem that until that date the owners of the stock could not authorize anyone other than the three proxy holders to call a special meeting of stockholders or to act as attorney in fact for that purpose. While the irrevocable nature of a proxy and the separation of stock ownership from the right to vote has been the subject of consideration in a number of cases, yet such irrevocable nature has generally been sustained when the proxy was for a limited time and when coupled with an interest. The present proxies are for a limited time and expressly state that they are coupled with an interest.
It will be readily seen then that the validity of the call for a special meeting of the stockholders by the notice to the Secretary of the Company depended upon the notice given by “William M. Jennings, Atty. in fact” and the ascertainment of the persons for whom he purported to act. He could not have acted for the record holders of the shares, (Fabel, Thermoid Managers’ Group, Inc. and Temple) other than through the proxies for, as seen, they had given irrevocable proxies to three named persons for the precise purpose, which proxies were effective until November 15, 1956.
Mr. Jennings in presenting the call to the Secretary for the special meeting of stockholders did not purport to act as attorney in fact for holders of the proxies, Bergen, Felt and Jennings, so that if he purported to act alone under the proxies and to give notice of the call for the special meeting as a proxy holder, his right, as one individual proxy holder, must be examined.
The proxies, as seen, appointed Bergen, Felt and Jennings “or a majority of such thereof as shall act * * * to exercise all rights as stockholder of the undersigned including the making of any demand for a special meeting or meetings of stockholders * * *
The giving of a proxy brings into play many of the principles of principal and agent and it has always been the law that in a private transaction (as distinguished from a public matter) an appointment of several agents shall be construed to be a joint appointment unless it clearly appears from the instrument that such appointment was to be joint and several.[2]
It is not contended that the language of the proxy made the appointment of the proxy holders as joint and several but it is contended that the language of the proxy contemplated that where only one of the proxy holders acted, that such action by one constituted “a majority” within the terms of the proxy. With this I cannot agree. The term “majority” when referring to three named persons and applied to a course of action by “a majority of such thereof as shall act” means, I think, such action by more than half of those entitled to act. The term “majority” is the antonym of “minority” and the counterpart of it. There is no more a “majority” where only one is concerned than there is a “minority” and the same person cannot be both.
Construction of a written instrument requires that every word must, if possible, be given effect. Construction other than as here indicated and allowance of action by one of three completely wipes out any effect to be given to the word “majority” and transforms the instrument into a joint and several proxy contrary to its terms. The defendant insists that the interpretation here adopted renders meaningless the words “as shall act.” I think this is not correct but the construction here adopted leaves these words in force where at least two or a “majority” act and only prevents action by one alone.
The proxies in this case are unusual in form. They are not made joint and several and differ materially from usual *404 forms of proxies to several persons as set out in the footnote.[3] In those forms usually used in connection with corporate meetings it is expressly provided that, under certain circumstances, one proxy holder may act and this provision is noticeably absent in the instant proxies.
Those cases involving joint proxies with a provision that one can act ordinarily refer to corporate elections, notice of which presumably has been received by all, and each joint proxy holder may, if he choose, attend. Here the action by one of three joint proxy holders was the demand for a special meeting of stockholders at a given and early date. No knowledge of the action by one proxy holder in demanding the special meeting is shown with relation to the other proxy holders and the demandant does not purport to act for them, and yet they each had an irrevocable proxy coupled with an interest and this interest, I presume, must have existed in each proxy holder.
The propriety of one, alone, of several joint proxy holders in exercising a demand for a special meeting of stockholders may be tested by a suggestion that each proxy holder then had a similar right to demand the meeting at a different date and there could be no majority action at all.
I am of the opinion that the proxies in question, drawn as they were to Bergan, Felt and Jennings, did not authorize Jennings to act alone so as to compel the Secretary of the Company to accept the notice by Jennings alone and to commit the Company to the expense of the special meeting.
The defendants also contend that it was the duty of the Secretary to pass upon the legality of the demand and of the validity of the proxies so as to give the demandant an opportunity to correct the error, if any existed. I am of the opinion that no such duty existed. The Secretary was compelled to take affirmative action within three days and commit the Company he represented to a very substantial expense in calling a special meeting of the stockholders, the number of which I am told exceeded 5,-000. It was, in effect, a forthwith demand. The demandant represented then, and it is strenuously contended now, that the demand was valid and legal and I find no duty upon the Secretary to indulge in a legal discussion as to the validity of the proxies.
The result of these conclusions must be that it does not appear that 25% of the stockholders requested the Secretary to call the special meeting of stockholders and that the special meeting called by 10% of the stockholders, and as to which this preliminary injunction relates, was an invalid meeting and the preliminary injunction must be granted.
No separate findings of fact and conclusions of law are herein filed since in this memorandum the pertinent findings and conclusions appear.
It is found that the special meeting of the stockholders herein discussed was called by the holders of over 10% of the stockholders of Thermoid entitled to vote; it is found that a special meeting of the stockholders could be called by the holders of 10% of the outstanding stock entitled to vote only upon the refusal or neglect of the Secretary of the Company to call such special meeting of the stockholders upon the request of the holders of 25% of the outstanding stock entitled to vote. It is further found that the holders of 25% of the outstanding stock did not request or demand of the secretary that he call a special meeting of the stockholders at the time and place mentioned in the said request.
It is further found that irreparable damage would be done if the proposed special meeting of the stockholders be held at the time and place designated and under the circumstances of the call.
It is concluded that the call for the special meeting of stockholders at the time and place designated was invalid and void.
*405 In this case the argument on the preliminary injunction was held on September 18 and involved numerous and extensive affidavits and other documents and a lengthy record of the argument. The special meeting of the stockholders was called for September 20 at Noon. Time not permitting a proper consideration of the various motions, the proposed meeting was allowed to be held but there was enjoined the transaction of any business other than an adjournment to a time to be fixed by the Court. The matter has been further delayed by additional hearing and briefs filed by the parties, the last of which was filed October 26,1956.
In accordance with the opinion now filed, the preliminary injunction will be continued and no time for an adjourned special meeting will be now fixed and an appropriate order may be submitted or counsel will be heard on the form of the order.
' The conclusion herein reached that the call for the special meeting of stockholders was invalid renders it unnecessary to consider the other questions raised.

. The undersigned, the holder of record of shares of the Common Stock, par value $1 per share, of Thermoid Company, hereby appoints John J. Bergen, Irving Mitchell Felt and William M. Jennings, or a majority of such thereof as shall act, attorneys and proxies, with power of substitution, to vote said shares of stock for the election or removal of directors at any and all annual or special meetings of stockholders of Thermoid Company, or any adjournment or adjournments thereof from the date hereof to and including November 15, 1956, to attend any and all such meetings and to exercise all rights as stockholder of the undersigned including the making of any demand for a special meeting or meetings of stockholders, as such attorneys and proxies shall deem advisable, all with the same effect as if the undersigned were personally present and acting.
This proxy and power is a proxy and power coupled with an interest and irrevocable.
Dated: May 18, 1956
Thermoid Managers’ Group, Inc. (signed) F. E. Schluter President

. 1 Mechera on Agency 196.

. 4 Am.Jur. Legal Forms p. 320; 2 Fletcher Corporation Forms Annotated, Secs. 1870, 1872, 18S0.